## HOUSE v. RAYMOND.

*Will — construction of — trusts what valid — Power to executors jointly, may be exercised by survivors.*

A testator by his will gave to his wife " the use of my homestead and all the personal property thereon, except," etc., " and bequeath unto her during her natural life the use of $20,000," and so much of the principal as she should wish.   By the sixth clause of the will he gave to his executors the " remainder of my real estate and personal estate in trust, to divide the same into seven equal parts, two of which parts my executors shall keep invested for the use and benefit of my son S, two for my daughter A, one for each of my grandchildren W, B, and E, the income whereof my executors shall pay to said devisees," etc.   He also directed that the unexpended part of the $20,000 given to his wife, after her decease, should be added to the remainder and divided and disposed of in like manner.   *Held*, (1) that the trust created by the sixth clause was valid ; (2) that the widow had but a life estate in the personal property bequeathed with the homestead ; (3) that the real estate, including the remainder after the widow's life estate in the homestead, was devised to the executors for the purposes of said trust; (4) that the same disposition was made of the personal property bequeathed with the homestead, and of the residue of the $20,000 undisposed of by the widow.

The testator authorized his executors to sell and convey his real estate " whenever they and my wife shall unanimously think that such sale will be advantageous to my estate."   *Held*, that the surviving executors, after the death of the widow, could sell and convey, provided they concurred in the conclusion that the sale was advantageous to testator's estate.

SUBMISSION of a controversy without action, pursuant to section 372 of the Code of Procedure.

The controversy was between Harry S. House and another, surviving executors of and trustees under the last will and testament

of Benjamin Raymond, deceased, against Sidney Raymond and another, children of said testator and devisees and legatees under said will, for a construction thereof.

The testator died November 17, 1870, leaving surviving a widow, Jane L. Raymond, the two children above named, and three grand-children, one Benjamin E. Raymond, son of said Sidney Raymond, the other two Wallace R. Flanders and Ella J. Flanders, children of said Augusta E. Flanders. The clauses of the will in contro-versy were these:

"First. I hereby give, devise and bequeath unto my beloved wife, Jane L. Raymond, the use of my homestead, and all the personal property thereon at my decease, except my safe and money, bonds, notes, contracts, mortgages and obligations of every nature and description. I also give, devise, and bequeath unto her during her natural life the use of $20,000; such sum to be set apart for that purpose, out of the best securities I may have at my decease, by my executors; and in the event my said wife shall desire to use any part of said sum of $20,000, I give and devise the same, or so much thereof as she may wish, to her, and direct my executors to pay the same to her.

"Sixth. I hereby give, devise, and bequeath unto my executors hereinafter named, all the rest, residue and remainder of my real estate and personal estate, in trust, nevertheless, for the uses and purposes hereinafter named, to wit: First, to divide the same into seven equal parts, two of which said parts my executors shall keep invested for the use and benefit of my son Sidney; two they shall keep invested for the benefit of my daughter Augusta E.; one of said parts for each one of my grandchildren, Wallace, Benjamin, and Ella. The income whereof my said executors shall pay to said devisees, or expend the same for the use and benefit of said devisees, from time to time, as they may deem advisable, so long as each of said devisees shall live.

"Ninth. It is my wish, and I hereby direct my executors, to allow my son Sidney, if he may desire it, to have the use of my office building and land attached thereto, by his paying the taxes and insurance thereon, and $70 annually as rent, so long as he may choose to occupy or use the same.

"Tenth. I hereby order and direct that any part or portion of the $20,000 devised to my wife Jane, which shall not have been disposed of by her at her decease, to be added to the parts or por-

tions sixthly above described, and to be divided and disposed of in precisely the same manner as therein and thereafter stated.

"Eleventh. I hereby authorize and empower my executors herein-after named to sell and dispose of any and all my real estate, and good conveyances make thereof, whenever they and my wife shall unanimously think that such sale will be advantageous to my estate, and to that end I hereby invest them, my said executors, with the title thereto, and with the full power and authority to make such conveyance."

The said executors, hereinbefore named, and the widow were appointed executors and executrix and trustees of the estate, to carry out the provisions of the will. The widow died July 22, 1874. No part of the real estate of testator had been sold, and no part of the $20,000 set apart to the widow had been used.

*Horace A. Taylor,* for plaintiffs.

*Joseph R. Flanders,* for defendants, cited *Mann* v. *Mann,* 14 Johns, 1; *Parks* v. *Parks,* 9 Paige, 117; *Simpson* v. *English,* 4 N. Y. Sup. 80; *Craig* v. *Craig,* 3 Barb. Ch. 76; *Vernon* v. *Vernon,* 53 N. Y. 351.

DANIELS, J. The first point requiring consideration in the disposition of this case is whether the testator's widow took the personal property in the homestead absolutely or only for the period of her natural life, and that must be determined from what was expressed by the first paragraph of the will. That paragraph, so far as it is now material to refer to it, was as follows: "I hereby give, devise and bequeath unto my beloved wife, Jane L. Raymond, the use of my homestead and all the personal property thereon at my decease, except," etc.

After excepting certain securities, money, and the safe containing them, he proceeded by adding "I also give, devise and bequeath unto her during her natural life, the use of twenty thousand dollars, * * * and in the event my said wife shall desire to use any part of said sum of twenty thousand dollars, I give and devise the same, or so much thereof as she may wish, to her, and direct my executors to pay the same to her."

The entire scope and design of these provisions seem to have been to provide a suitable support and maintenance for his wife during

House v. Raymond.

her natural life, limiting the benefit of the bequests and devises for her to that period of time. It appears to have been the testator's design to provide amply for that object while she lived, and then to have the property, unexhausted in accomplishing it, returned to the body of his estate at the expiration of that period. And the terms made use of in the first clause were judiciously selected to secure that result. He did not devise her the use of his homestead during life and bequeath absolutely to her the personal property thereon at the period of his decease subject to the exception afterward declared, but simply the use of both. That term was employed to qualify the interest given her in the personal property as well as in the homestead itself. It was of such a nature as to render the use of the homestead comfortable and convenient, and was undoubtedly made to accompany it for that reason. Other terms would be required to be added to the clause in order to give her any greater interest than that in the personal property referred to.

It is next claimed that the executors took no title to the testator's real estate, because he directed them to divide and invest the property left by him for the benefit of his children and grand-children. But while that was the direction which was given, a construction based upon that circumstance which would exclude the realty would be directly in conflict with an express devise of the real estate made in the same subdivision of the will. Upon that subject the testator declared:

"I hereby give, devise and bequeath unto my executors hereinafter named all the rest, residue and remainder of my real estate and personal estate in trust, nevertheless, for the uses and purposes hereinafter named, to wit: First. To divide the same into seven equal parts, two of which said parts my executors shall keep invested for the use and benefit of my son Sidney; two they shall keep invested for the benefit of my daughter Augusta E.; one of said parts for each of my grand-children, Wallace, Benjamin and Ella. The income whereof my said executors shall pay to said devisees, or expend the same for the use and benefit of said devisees, from time to time as they may deem advisable, so long as each of said devisees shall live."

This was a valid trust under the statutes of this State (*Vernon* v. *Vernon*, 53 N. Y. 351), and was in terms made so extended as to include all the testator's property not previously disposed of.

But it is contended that such could not have been the intention

of the testator because the real estate, particularly the homestead devised to his wife for life, could not be divided and invested, as it was afterward directed his property should be; and that the proceeds to be divided being denominated "income," did not properly include the profits of real estate. Besides that the unexpended residue of the $20,000 was directed to be added to the portions of the estate to be invested and divided, and because the remainder of the homestead estate was not included in the same direction, it is claimed that this omission is evidence that it was not the testator's purpose to include it. But neither nor all of these reasons would justify the exclusion of the real estate in view of the positive direction contained in the will to the contrary. The testator upon this subject used clear and comprehensive language, declaring it to be his design, for the purposes of the trust, to devise "all the rest, residue and remainder" of his real as well as his personal estate to the executors. And that included the remainder of the estate in the homestead remaining after the life estate created for his wife, as well as the other two pieces of property of that nature which he owned at the time of his decease, and the personal property bequeathed for life with the homestead.

These terms were sufficient for that purpose. *Youngs* v. *Youngs*, 45 N. Y. 254. And as long as that was the nature of them, a repetition of the purpose expressed by them was not afterward essential in order to render them effectual. *Salisbury* v. *Morss*, 7 Lans. 359, 362, 363.

The construction which has been contended for would result in excluding the direction concerning the rest, residue and remainder of the real estate entirely from the will, and that it is the duty of the court to avoid by harmonizing the directions relied upon as inconsistent with the design of including that species of property, so that they may all be maintained together. And that can very well be done by limiting the directions given to the executors to invest, to the personal estate, which was all that in its nature was susceptible of investment. For that reason the testator probably so intended, though the intention was not clearly expressed in words.

It is, however, to be inferred from the fact that both real and personal property was given in trust to the executors, and from the further circumstance that he appears to have designed that his children and grandchildren should by means of the trust be secured the entire benefit of all his property, so far as it was not specifically

devised for the enjoyment and support of his wife, and the payment of certain legacies. The income directed to be so applied is entirely consistent with this conclusion, for the terms used to describe it are broad enough to include the rents and profits of the real estate as well as the interest derived from the investment of the personal property.

It was claimed that the direction to allow the testator's son Sidney to have the use of the office and the land connected with it, was opposed to such a construction of the sixth paragraph of the will. But as he was required to pay the executors an annual rent of $70 for such use and occupancy, no such effect can be attributable to it, for its payment enabled them to make precisely such a division of the proceeds, or income of the property, as they were required to for the purpose of executing the trust previously declared.

The effect of the will was to devise and bequeath to the executors, for the purposes of the trust, all the testator's property not required to pay the legacies, subject to the provision made for his wife, which they were to invest so far as it was capable of investment, and divide and apply the income in the manner particularly specified, for the benefit of his children and grandchildren during life.

Power was given the executors to sell and dispose of all or any of the testator's real estate, whenever they and his wife, who was also nominated, and acted as executrix, should unanimously think such sale advantageous to the estate, and they were invested in that case with full power and authority to convey it. The plaintiffs, who are the surviving executors, claim that they may now lawfully execute this authority. While the testator's wife was living, her assent was undoubtedly required to the conveyance of a valid title by means of the power. The right to sell was rendered conditional upon the unanimous conclusion of all, that the sale would be advantageous to the estate. It was a discretionary authority, in the exercise of which all were required to concur. But it was no more than that, for a dissent of either one of the three, would prevent it from being used. And the fact that the authority may be of that nature, does not restrain the survivors from executing it. The statute upon that subject is general, applying to discretionary and qualified authority to sell, as well as those of a more absolute and unrestricted character.

The provision made upon the subject is, that "Where a power is

vested in several persons, all must unite in its execution; but if, previous to such execution, one or more of such persons shall die, the power may be executed by the survivor or survivors." 1 R. S. 735, § 112. And it seems to be clearly applicable to the present case.

. The same construction in this respect has been given to another statute in principle very much like this provision. That is the statute giving the acting executors full power to act under the will nominating them, where others jointly selected, decline to accept the trust. 2 R. S. 109, § 55. In that case the acting executors may exercise even a discretionary authority, though it may have been jointly conferred upon them with others also designed to possess and execute it. *Taylor* v. *Morris*, 1 N. Y. 341.

And there is no substantial distinction in principle between that provision and the one more especially relating to this case. For one provision confers upon the surviving recipients of a power the same authority which the other does upon acting executors, where others selected to exercise the authority with them decline to accept it. And under the terms of that provision no good reason appears for doubting the power of the surviving executors to exercise the authority to sell, provided they are satisfied that a sale of the real estate will be advantageous to those interested in the estate left for them by the testator.

Judgment should, therefore, be directed, adjudging that the widow had but a life estate in the personal property bequeathed with the homestead; that the real estate, including the remainder after the widow's life estate in the homestead, was devised to the executors for the purposes of the trust created by the sixth paragraph of the will; that the same disposition was made of the personal property bequeathed with the homestead, and of the residue of the $20,000 undisposed of by the widow; and that the surviving executors have the power to sell and convey any or all the real property, provided they concur in the conclusion that the sale is advantageous to the testator's estate, and for the recovery of the taxable costs of both parties, to be paid by the executors out of the shares of the defendants in the funds in their hands.

The shares of the grand-children should not contribute to the expense of the litigation, because they are not made parties to the proceeding.

*Ordered accordingly.*